**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EWING & KREISER, P.C., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES and FLOY STEPHENS, | : | No. 08-5490 |
| Defendants. | : | |

**FILED**

MAY   1 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM RE:  MOTION TO SET ASIDE DEFAULT JUDGMENT

**Baylson, J.**

**MAY 1, 2009**

Before this Court is Defendant Charles Stephens and Defendant Floy Stephens's Motion to Set Aside Default Judgment (Doc. 7).  Having denied Defendants' Motion (Doc. 16), the following Memorandum explains the rationale of this Court's decision.

## I.      Background and Procedural History

On November 21, 2008, Plaintiff law firm, Ewing & Kreiser, P.C., filed the current complaint against Defendants Charles Stephens and Floy Stephens, who are husband and wife. (Doc. 1).  The complaint arises out of two earlier lawsuits before this Court, Civ. A. No. 04-3642, and Civ. A. No. 04-272.  The complaint alleges that Ewing & Kreiser represented Charles and Floy Stephens in those earlier actions and that Defendants have refused to pay the legal fees for the representation.  When Defendants failed to answer the Complaint, Plaintiff offered an affidavit of service (Doc. 3) and a request for default (Doc. 4, 5).  Default judgment was then entered on February 18, 2009 in favor of Ewing & Kreiser and against Defendants Charles and Floy Stephens in the amount of $101,034.93, with costs.  (Doc. 6).

On March 3, 2009, Defendants filed the current Motion to Set Aside Default Judgment.

-1-

(Doc. 7).  Plaintiff filed a response to the Motion on March 17, 2009.  (Doc. 9).  Defendants filed

a reply brief on April 1, 2009 (Doc. 14), and Plaintiff filed a sur-reply on April 13, 2009 (Doc.

15).

## II.    Discussion

Rule 55(c) of the Federal Rules of Civil Procedure provides that this Court "may set aside

an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."

Fed. R. Civ. P. 55(c).  Rule 60(b) provides that, "[o]n motion and just terms, the court may

relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1)

mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  A district court

has

> broad discretion in deciding whether to set aside a default
> judgment.  In general, defaults are not favored because the interests
> of justice are best served by reaching a decision on the merits.
> [Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307
> (E.D. Pa. 1995).]  The Third Circuit has explicitly stated it "does
> not favor default judgments and in a close case, doubts should be
> resolved in favor of setting aside the default and reaching the
> merits."  Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420
> (3d Cir. 1987).  Thus, motions to set aside default judgments are
> construed in favor of the movant.

Blue Ribbon Commodity Traders, Inc. v. Progresso Cash & Carry, 2008 WL 2909360, at *1

(E.D. Pa. July 23, 2008) (Pollak, J.) (quoting Blue Ribbon Commodity Traders, Inc. v. Quality

Foods Distribs., 2007 WL 4323001, at *1 (E.D. Pa. Dec. 11, 2007) (Kelly, S.J.)).

In deciding a motion to vacate a default judgment, there are four factors that this Court is

required to consider:  "(1) whether the plaintiff will be prejudiced if the default judgment is set

aside; (2) whether the defendant has a meritorious defense; (3) whether the default was the

product of defendant's culpable conduct; and (4) whether alternative sanctions would be effective." Progresso Cash & Carry, 2008 WL 2909360, at *2 (quoting Quality Foods, 2007 WL 4323001, at *2); see also Jackson v. Delaware County, 211 F.R.D. 282 (E.D. Pa. Nov. 21, 2002) (Baylson, J.) (considering factors on a motion to set aside entry of default). "[T]he threshold consideration is whether the defendant has alleged facts which would constitute a meritorious defense." Progresso Cash & Carry, 2008 WL 2909360, at *2 (quoting NuMed Rehab., Inc. v. TNS Nursing Homes of Pa., Inc., 187 F.R.D. 222, 224 (E.D. Pa. 1999)).

This Court has considered in detail the affidavits filed in support and in opposition to Defendants' Motion. On the one hand, the affidavit of Mr. Stephens is conclusory and unsupported by any documentary evidence, which would be available to support Mr. Stephens's claims. On the other hand, the affidavit of Travis Kreiser, Esquire, who served as Mr. Stephens's personal attorney in the underlying litigation, is full of accurate details, and completely supported by attachments. This Court has also considered its own personal knowledge of the underlying litigation, of which the undersigned was the supervising judge. In all respects, this Court credits the Kreiser affidavit.

A.      **Meritorious Defense**

This Court must first consider whether Defendants Charles and Floy Stephens have offered a "meritorious defense."

> "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). [The defendant] need not "prove beyond a shadow of a doubt that [it] will win at trial." Emcasco[ Ins. Co. v. Sambrick], 834 F.2d [71,] 74 [(3d Cir. 1987)]. Rather, it is enough for [the defendant]

to show that its defense is not "facially unmeritorious."  Id.
(quoting Gross v. Stereo Component Systems, Inc., 700 F.2d 120,
123 (3d Cir. 1983)).  Nonetheless, it is not enough for a defendant
to allege only "simple denials or conclusory statements."
$55,510.05 in U.S. Currency, 728 F.2d at 195.

Progresso Cash & Carry, 2008 WL 2909360, at *2 (quoting Quality Foods, 2007 WL 4323001, at

*2).  As Judge Pollak recognized in Progresso Cash & Carry, while this Court is required to

assume the validity of a defendant's factual claims, a defendant's "simple denials or conclusory

statements" are simply insufficient to establish a meritorious defense.

As the undersigned presided over the two cases in which Plaintiff law firm represented

Defendants, this Court will not and can not ignore its personal knowledge of the facts and

circumstances at issue here, which show that Defendants' proffered defenses are without basis in

fact or completely lack substantive merit.

Defendants have offered several defenses, which they argue would prevent liability if

established:

(1) lack of personal jurisdiction - both Charles and Floy Stephens live in Alabama, and, in

their personal capacities, they have never conducted business in Pennsylvania;

(2) failure to join indispensable parties - Ewing & Kreiser represented Bennett

Composites, Inc., the company that Charles Stephens co-owned with Gary Bennett, and

Defendants therefore contend that Bennett Composites, Inc., along with Gary Bennett (the 85%

owner of Bennett Composites) and Kay Bennett, should be joined in the case for failure to pay

the legal fees of Bennett Composites;

(3) there was no contract between Plaintiff and Defendants - Defendants argue that they

never contracted with Plaintiff for personal representation, and any such contract existed for

-4-

representation of Bennett Composites;

      (4) Defendants' small ownership interest in the corporation, which was represented by Plaintiff, is insufficient to impose liability on Defendants;

      (5) the legal fees were excessive and out of proportion with work performed;

      (6) not all of the work was performed for the benefit of Defendants; and

      (7) the invoices have an insufficient amount of detail to support the judgment.[1]

Defendants later argued that this Court lacks subject matter jurisdiction for claims against Floy Stephens, as the $75,000 amount in controversy exception has not been met; Defendants note that Plaintiffs have alleged that Floy Stephens was only represented after March 4, 2006 and the legal fees after that date only total $38,633.84.

      In support of the above arguments, Defendants have attached an affidavit from Charles Stephens, which states that Defendants, in their personal capacities, never engaged Ewing & Kreiser and that Defendants have had no contact with Pennsylvania in their personal capacities. As for the remaining arguments, Defendants failed to allege any facts in support and instead provided only conclusory statements and conclusions of law.

      In response, Plaintiff contends that this Court already determined that personal jurisdiction exists over Defendants in the two prior cases. Plaintiff also argues that Defendants' contention that Ewing & Kreiser never represented Defendants in their personal capacities is a "bold-face lie." Importantly, Plaintiff offers several documents that contain Charles Stephens's signature indicating that he guaranteed payment on the representation and contain other signs of

---

[1] Defendants also argue that Ewing & Kreiser only sued Defendants because the corporation that Charles Stephens partially owns and his partner are judgment proof. This argument is essentially the same as argument (3).

representation. In addition, the undersigned has personal knowledge that Stephens' affidavit omits many material facts relevant to the proposed defenses and that Kreiser's affidavit is true. To the extent there are conflicts, Kreiser's affidavit states the correct facts and has corroborating support from the documentary evidence he supplies. Defendants will not be allowed to circumvent or disregard those facts that do not support their Motion which the undersigned personally knows occurred in the underlying litigation. As a matter of law, Defendants' defenses are not meritorious.

Plaintiff has provided this Court with sufficient evidence to suggest that it would succeed on the merits and prevail over any of the defenses offered by Defendants.

**B.     Prejudice**

The next consideration is whether Plaintiff would be prejudiced if this Court vacates the entry of default. "A plaintiff may be prejudiced by the vacating of a default judgment when [the] plaintiff's claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors." Progresso Cash & Carry, 2008 WL 2909360, at *3 (quoting Quality Foods, 2007 WL 4323001, at *2) (internal quotations omitted). Considering the facts relating to the underlying litigation that are detailed in the Kreiser affidavit, Defendants are once again using, as they did in the underlying litigation, non-meritorious legal positions to delay their contractual obligations, and they are inferentially doing so to avoid paying Plaintiff the fees that are due. Plaintiff is prejudiced by this conduct.

**C.     Culpable Conduct**

This Court must next consider "whether [the defendant's] failure to respond to the

Complaint amounted to culpable conduct or excusable neglect.  Culpable conduct means actions taken willfully or in bad faith.  Culpable conduct can be inferred when a defendant exhibits reckless disregard for repeated communications from either the plaintiff or the Court."  Progresso Cash & Carry, 2008 WL 2909360, at *3 (internal citations and quotations omitted).

Defendants have stated that they did not answer the complaint for two primary reasons. First, Charles Stephens, in his affidavit, stated that he was hospitalized twice starting only a few days after being served with the current complaint, and his doctor only permitted him to return to work part-time starting on January 8, 2009.  However, despite the fact that these allegations could be supported with documentary evidence, he has failed to provide any corroboration for this self-serving claim, such as a physician letter or any medical records.  Second, Stephens also stated in his affidavit that most of his and his wife's assets are tied up in "non-liquid assets" and that, due to the economy, he was unable to sell those assets and furnish the retainer for counsel in Pennsylvania until mid-February.  This allegation could also be supported by documentary evidence, and could have been submitted in camera.  The economic crisis has affected and reduced liquidity for many.  However, this is not a reason to fail to sell assets to satisfy a legitimate debt to his counsel or to pay retainer fees for litigation.  Although Defendants purported to support these statements with another affidavit from a lawyer at Mr. Stephens's Alabama firm, which stated that the firm received the complaint in the current matter from Charles Stephens on December 9 but were unable to obtain local counsel to pursue the case due to Defendants' financial inability to post the required retainer, this attorney affidavit is also unsupported and uncorroborated.  In addition, the affiant does not appear to have personal knowledge of the causes of Mr. Stephens's conduct, relying solely on what Mr. Stephens told

him.

As an example of culpable conduct by Defendants in this case, the Court agrees with the Kreiser affidavit where it contradicts specific allegations and statements in Defendants' papers, including Stephens' denial of having a contract with the Kreiser firm, Stephens' claim that the Kreiser firm was only representing the Bennetts, that the Kreiser firm did not perform any work for Stephens and his wife, and that this Court does not have personal jurisdiction—failing to recognize that this Court squarely held to the opposite.

The Kreiser affidavit is also correct in paragraph 63 where Mr. Stephens, after verbally agreeing to a settlement and mediation with Magistrate Judge Strawbridge, refused to sign the Settlement Agreement and the undersigned thereafter entered Judgment on the Settlement Agreement. The Stephens conduct was culpable in the underlying litigation and is culpable in this litigation.

D. **Alternative Sanctions**

Given Stephens' conduct in the underlying litigation in this case, this Court concludes that no alternative sanctions are appropriate.